UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BC MEDIA FUNDING COMPANY II and MEDIA      :    **ECF CASE**
FUNDING COMPANY,                           :    08-CV-06228 (RPP) (RLE)
                                           :
            Plaintiffs,                    :
                                           :
      -against-                            :    **REPLY**
                                           :    **DECLARATION OF**
FRANK LAZAUSKAS, MICHAEL L. METTER,        :    **TIMOTHY P. OLSON**
LEONARD F. MUSCATI and B. MICHAEL PISANI,  :
                                           :
            Defendants.                    :
                                           :
------------------------------------------------------------------------x

I, Timothy P. Olson, declare the following:

1.      I am the Managing Director and General Counsel of Barker Capital, LLC

("Barker Capital"). All of the facts stated herein are based on my personal knowledge.

2.      Mr. Metter's declaration is filled with inaccurate statements.

3.      The first inaccuracy in Mr. Metter's declaration is his contention that he was not

represented by counsel at the time that he entered into the Forbearance Agreement with

Plaintiffs. (Metter Declaration Paragraph 36 (b)). I was directly involved in the negotiation of

that agreement and was in contact with the attorney for the borrower, BusinessTalkradio.net, Inc.

("BTR")— Joseph Emas of Miami Beach, Florida. Mr. Emas was provided ample opportunity

to review, and comment on. the Forbearance Agreement.[1] (Annexed hereto as Ex. A are true and

correct copies of email correspondence relating to the Forbearance Agreement). Indeed, both

Mr. Emas and Mr. Metter provided comments on various provisions of the Forbearance

Agreement, and Mr. Emas ultimately distributed the execution copy of the Forbearance

---

[1]      The Forbearance Agreement is annexed as Exhibit G to the Affidavit of Timothy P. Olson, sworn to on
June 5. 2008 ("Olson Affidavit").

Agreement. (*Id.*). Despite the fact that this agreement addressed BTR's defaults under the financial covenants of the Financing Agreement, neither Mr. Metter, nor his attorney, raised any objection to those covenants as written in the Financing Agreement, or made any reference to Mr. Metter's alleged prior attempts to revise the financial covenants. (*Id.*)

4.      Prior to entering into the Forbearance Agreement in December 2007, Mr. Metter had other opportunities to object to the financial covenants in the Financing Agreement. For example, in October 2007 BTR and Plaintiffs negotiated an amendment and limited waiver to the Financing Agreement relating to BTR's purchase of a Pittsburgh radio station. I was directly involved in the negotiations concerning this transaction. At this time, BTR and Mr. Metter were represented by Seiden Wayne LLC, the same law firm that represented them at the November 2006 loan closing.[2]   Both Mr. Metter and his counsel provided comments regarding the amendment. (Annexed hereto as Ex. B is email correspondence concerning the Amendment). At no time did Mr. Metter or his counsel express any dissatisfaction with the financial covenants in the Financing Agreement or propose an amendment to those covenants. BTR purchased the Pittsburgh radio station without signing the amendment, triggering a host of defaults under the Financing Agreement.

5.      Apart from these transactions, I have spoken to Mr. Metter on numerous occasions and he has never told me that the financial covenants contained in the Financing Agreement are "incorrect" or need to be amended, revised or otherwise modified. The first time I became aware of any issues Mr. Metter had with these financial covenants was when I read his declaration in this action.

---

[2]      The details surrounding the loan closing and the Financing Agreement are set forth in the Reply Declaration of Dale E. Norton III ("Norton Declaration").

## Mr. Metter's Allegations Concerning The Financial Covenants

6.      Mr. Metter's contention that Plaintiffs were solely responsible for the drafting of the Financing Agreement is incorrect. Under Section 10.13 of the Financing Agreement, neither party may be deemed the drafter of the document. Moreover, as discussed in the Norton Declaration, Mr. Metter provided Plaintiffs with the financial projections that formed the basis of the financial covenants.

7.      A review of Barker Capital's records indicates that (a) twenty versions of the Financing Agreement were drafted, (b) a draft version was sent to BTR's counsel on November 9, 2006, well before the closing, and (c) BTR's counsel made no comments in regard to the financial covenants before closing. The November 9, 2006, draft of the Financing Agreement contained financial covenants that were identical to the financial covenants that appeared in the executed version of the Financing Agreement.

## BTR's Defaults Under The Financing Agreement

8.      BTR has been in continuous default of numerous covenants other than the financial covenants in the Financing Agreement since obtaining a loan from Plaintiffs in November 2006. However, Plaintiffs have tried to work with BTR in curing these defaults rather than immediately exercising their rights under the Financing Agreement. Despite Plaintiffs' efforts, BTR has persisted in defaulting. Some examples of BTR's defaults are:

- For 14 of the 20 months subsequent to the closing of the loan, BTR has failed to provide Plaintiffs with monthly financial statements on a timely basis as required under Section 6.01(a)(iii) of the Financing Agreement.

3

• BTR has failed to provide Plaintiffs with audited financial statements for the year 2007, which were due in March 2008 under Section 6.02(a)(ii) of the Financing Agreement.

• For 2008, BTR has failed to provide Plaintiffs with statements of personal net worth for each of the individual guarantors (the defendants herein), which are required to be delivered on a quarterly basis pursuant to Section 6.04 of the Financing Agreement.

The Officer's Certificates submitted with Plaintiffs' motion further demonstrate defaults occurring outside the financial covenants of the Financing Agreement: BTR's failure to deliver a written subordination and access agreement for KNUU radio station in Las Vegas, Nevada; and BTR's issuance of stock in violation of a credit agreement entered into by the parties. (The Officer Certificates are annexed to the Olson Affidavit as Exhibits I and J).

9. Mr. Metter's reliance on a Private Placement Memorandum issued in October 2007 as evidence that Plaintiffs did not deem BTR to be in default is a red herring – Plaintiffs' motion papers seek relief for defaults occurring after October 2007. In addition, all of the defaults described in the preceding paragraph include defaults occurring after October 2007.

10. Mr. Metter has consistently attempted to avoid any discussions regarding BTR's defaults by arguing that BTR's payments have been made — that BTR is current in its payments under the Financing Agreement. However, BTR is not current, and Plaintiffs are entitled to BTR's compliance with all the covenants (payment, financial and other covenants) that are conditions to the loan. Under the Financing Agreement, Plaintiffs are entitled to receive default interest upon the occurrence of any default (*See* Financing Agreement Section 2.04(b)). Despite the existence of numerous and varied defaults, BTR has been unwilling to pay default interest,

4

and BTR's failure to pay this interest is, in itself, a default. Moreover, BTR's failure to pay default interest has resulted in a deficit in principal payments, as any monies received from BTR are first applied to the default interest owed, as mandated by the Financing Agreement. (*See* Financing Agreement Section 3.03). Moreover, Mr. Metter's declaration implies that Plaintiffs have waived any entitlement to default interest by accepting BTR's payments. This is completely inaccurate because no waiver of any provision of the Financing Agreement may occur unless such waiver is in writing and signed by either the lender or the agent with the lender's consent. (*See* Financing Agreement Sections 10.02 and 10.03).

## The Individual Guarantors' Waiver Of Defenses

11. Mr. Metter's declaration is not only filled with inaccuracies concerning the relationship between the parties but ignores the language of the unconditional guarantees executed by the individual Defendants. These guarantees state:

> [T]he obligations, liabilities, agreements, and duties of Guarantor under this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any or all of the following...:
>
> (iv) The invalidity, deficiency, illegality or unenforceability of any of the Guaranteed Obligations or the Obligation Documents, in whole or in part, any bar by any statute of limitations or other law of recovery on any of the Guaranteed Obligations, or any defense or excuse for failure to perform on account of force majeure, act of God, casualty, impossibility, impracticability **or any other defense or excuse whatsoever.**

(Section 2(b)(iv)) (emphasis added).

Thus, in signing the absolute and unconditional individual guarantees, Defendants waived their right to assert defenses to Plaintiffs' enforcement of those guarantees.

I hereby declare under the penalties of perjury that the foregoing is true and correct.

Executed on the 12th day of August 2008.

TIMOTHY P. OLSON

**Timothy Olson**

| | |
|---|---|
| **From:** | Joseph I. Emas [jiemas@josephiemaspa.com] |
| **Sent:** | Wednesday, December 26, 2007 12:58 PM |
| **To:** | Timothy Olson |
| **Cc:** | greenwich4@aol.com |
| **Subject:** | RE: BTR Forbearance |
| **Attachments:** | Forbearance Agreement 122607 redline (JIE).doc |
| | |
| **Categories:** | BTR, 1 Barker |

Mr. Barker;

I am assisting BusinessTalkradio.net, Inc. in the preparation of their private placement memorandum.  In the course of my representation, i was requested to review the attached Forbearance Agreement. I did not review nor was I council for BusinessTalkradio.net, Inc. in the original underlying agreement.

In my review, I have made a few modifications (in redline). Your review and comments would be appreciated.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein.  No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

---

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Wednesday, December 26, 2007 10:45 AM
**To:** jiemas@josephiemaspa.com
**Subject:** Re: BTR Forbearance

Joe

Tim Olson is Jacob Barker's in house council, His email address is TPO@barkercap.com his phone number is 605-338 9722

thanks in advance

MM

1

-----Original Message-----
From: Joseph I. Emas <jiemas@josephiemaspa.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Mon, 24 Dec 2007 12:13 pm
Subject: RE: BTR Forbearance

**Section 1.01      Borrower shall consummate the Bridge Financing and receive immediate access to the cash proceeds therefrom no later than January 31, 2008.**

You may want to provide for an optional 30 extension (just to be safe).

**Section 1.02      Borrower shall, and shall cause its Subsidiaries to, continue to perform and observe all terms and conditions contained in the Credit Agreement and other Loan Documents.**

Section 1.03      Borrower shall reimburse Agent and Lender for all costs and expenses incurred in connection with the negotiation, preparation and enforcement of this Agreement (including, without limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent or any Lender).

Find the the costs and cap this provision so you are not paying any exorbitant "add-on" costs.

**Section 1.04      Borrower shall fully and publicly disclose the existence of the Existing Defaults in compliance with all applicable securities laws.**

change to...

Borrower shall fully and publicly disclose the existence of this agreement and a summary of its terms and conditions in compliance with all applicable securities laws.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Monday, December 24, 2007 11:31 AM
**To:** jiemas@bellsouth.net; SHOBMP@aol.com
**Subject:** Fwd: BTR Forbearance

Joe

As per our conversation here is a copy of their forebearance agreement.

MM

-----Original Message-----
From: Jacob J. Barker <jjb@barkercap.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Sat, 22 Dec 2007 6:59 pm
Subject: FW: BTR Forbearance

FYI

-----Original Message-----
**From:** Timothy Olson
**Sent:** Friday, December 21, 2007 4:28 PM
**To:** Jacob J. Barker
**Subject:** BTR Forbearance

Jacob,

Here's the draft forbearance agreement.  Subject to your comments, it is ready to go to BTR.

Tim

More new features than ever. Check out the new AOL Mail!

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "*Agreement*") is dated as of December ____, 2007 and is entered into by and among BusinessTalkradio.net, Inc., a Delaware corporation (the "*Borrower*"), and The Greenwich Broadcasting Corporation, a Connecticut corporation ("*Greenwich*"), The Lifestyle TalkRadio Network, Inc., a Delaware corporation ("*Lifestyle*"), BTR West, Inc., a Nevada corporation ("*BTR West*"), BTR Communications Boston, Inc., a Massachusetts corporation ("*BTR Boston*"), BTR Greenwich, Inc., a Connecticut corporation ("*BTR Connecticut*"), BTR West II, Inc., a Nevada corporation ("*Nevada II*"), BTR Communications Boston II, Inc., a Massachusetts corporation ("*Boston II*"), WURP East, Inc., a Pennsylvania corporation ("*Pittsburgh East*"), WURP, Inc., a Pennsylvania corporation ("*Pittsburgh*", and together with Greenwich, Lifestyle, BTR West, BTR Boston, BTR Connecticut, Nevada II, and Pittsburgh East, the "*Subsidiary Guarantors*"), Media Funding Company, LLC, a Delaware limited liability company (the "*Lender*"), and BC Media Funding Company II, LLC, a Delaware limited liability company, as agent for the Lender (in such capacity, the "*Agent*").

## RECITALS:

WHEREAS, Agent, Lender and Borrower are parties to that certain Financing Agreement dated as of November 13, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*");

WHEREAS, Events of Default have occurred under subsection 8.01(c) of the Credit Agreement in that the Borrower failed to achieve (i) a minimum fixed charge coverage ratio of at least 1.0 to 1.0 in accordance with the requirements of Section 6.03(b) of the Credit Agreement for the 12-month periods ending on January through September 2007; (ii) Consolidated EBITDA in accordance with the requirements of Section 6.03(c) of the Credit Agreement for the quarters ending March 31, 2007, June 30, 2007, and September 30, 2007; and (iii) Net Cash Revenue in accordance with the requirements of Section 6.03(d) of the Credit Agreement for the quarters ending March 31, 2007, June 30, 2007, and September 30, 2007 (such Events of Default, the "*Existing Defaults*"); and

WHEREAS, Agent and Lender are willing to forbear from enforcing their rights that arise because of the Existing Defaults for a limited period of time, provided that Borrower complies with the terms of this Agreement.

1

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I. DEFINITIONS

**Section 1.01**        All capitalized terms used herein (including in the introductory paragraph and recitals set forth above) and not otherwise defined shall have the meanings assigned to such terms in the Credit Agreement.

**Section 1.02**        The following terms used in this Agreement shall have the meanings set forth below:

"*Bridge Financing*" means that certain financing to be entered into by the Borrower and _____ in a principal amount of at least $_____, to be utilized by the borrower to fund development of the Borrower's website, pay for certain accounting-related services and for certain other working capital purposes, which financing, in all respects, shall be subordinate to the Obligations under the Credit Agreement.

"*Forbearance Default*" means (a) the occurrence of any Default or Event of Default other than the Existing Defaults; (b) the failure of Borrowers to comply with any term, condition or covenant set forth in this Agreement, (c) any representation made by Borrowers under or in connection with this Agreement shall prove to be materially false or misleading as of the date when made or (d) the filing of any petition (voluntary or involuntary) under the insolvency or bankruptcy laws of the United States or any state thereof, or of any foreign jurisdiction, with respect to a Borrower, any of its affiliates, or any of its Subsidiaries.

"*Termination Date*" means the earlier to occur of (a) 5:00 p.m. New York time on March 31, 2008, or (b) the date upon which a Forbearance Default occurs.

## ARTICLE II.        CONFIRMATION BY BORROWERS OF OBLIGATIONS

Each Borrower acknowledges and agrees that as of the date hereof, the Borrowers have no right of offset, defense, or counterclaim with respect to the Obligations.

## ARTICLE III.        AGREEMENT TO FORBEAR; SUBORDINATION AGREEMENT; OTHER AGREEMENTS

**Section 3.01**        Provided that no Forbearance Default occurs, Agent and **Lender** hereby agree to refrain, through the Termination Date, from exercising any of their rights and remedies under the Credit Agreement or any of the other Loan Documents that may exist by virtue of the Existing Defaults.  If Borrowers comply with

all terms, covenants and conditions set forth in this Agreement, the Agent and Lender agree that the Existing Defaults shall be deemed waived.

**Section 3.02**        Nothing in this Agreement shall be construed as a waiver of or acquiescence to the Existing Defaults which shall continue in existence, subject only to the agreement of Agent and Lender, as set forth herein, not to enforce their remedies for a limited period of time.  Nor shall anything in this Agreement be construed as the Agent's or the Lender's consent to the Bridge Financing, which shall be subject, in all respects, to the approval of the Agent and the Lender in their sole and absolute discretion.  Except as expressly provided herein, the execution and delivery of this Agreement shall not: (a) constitute an extension, modification, or waiver of any aspect of the Credit Agreement or the other Loan Documents; (b) extend the terms of the Credit Agreement or the due date of any of the Obligations; (c) give rise to any obligation on the part of Agent or any Lender to extend, modify or waive any term or condition of the Credit Agreement or any of the other Loan Documents; (d) give rise to any defenses or counterclaims to the right of Agent or Lender to compel payment of the Obligations or to otherwise enforce their rights and remedies under the Credit Agreement and the other Loan Documents; or (e) establish a custom or course of dealing between or among the Borrowers, the Agent and/or the Lender, or any of them. Except as expressly limited herein, Agent and Lender hereby expressly reserve all of their rights and remedies under the Credit Agreement and the other Loan Documents and under applicable law with respect to the Existing Defaults. From and after the Termination Date, Agent and Lender shall be entitled to enforce the Credit Agreement and other Loan Documents according to the original terms thereof.

**Section 3.03**        Provided that no Forbearance Default occurs, the parties hereto hereby agree that Borrower shall not be required to make the principal amortization payment of $75,000 required on December 31, 2007, and the principal amortization payment of $3,000 required on February 28, 2008.

**Section 3.04**        The parties hereto hereby agree that, effective as of and retroactive to December 1, 2007, the Payment-in-Kind Interest Rate shall be increased by 300 basis points so that the Payment-in-Kind Interest Rate is 4.50% per annum.

## ARTICLE IV.        REPRESENTATIONS AND WARRANTIES

In consideration of the limited agreement of Agent and Lender to forbear from the exercise of their rights and remedies as set forth above, each Loan Party jointly and severally hereby represents and warrants to Agent and Lender as of the date hereof as follows:

**Section 4.01**        Borrowers has made full disclosure to Agent and Lender of all Existing Defaults and Events of Default and all other disclosures as is required under subsection 6.01(a)(ix) of the Credit Agreement.

3

**Section 4.02**     The execution, delivery and performance of this Agreement by each Loan Party ~~party~~ hereto are within such Person's corporate power and have been duly authorized by all necessary corporate action.

**Section 4.03**     This Agreement constitutes a valid and legally binding Agreement enforceable against each Loan Party ~~party~~ hereto in accordance with its terms, subject to the effects of bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights generally and to general equitable principals.

**Section 4.04**     All Loan Documents, including without limitation the Credit Agreement, constitute valid and legally binding obligations of each Loan Party ~~party~~ thereto, enforceable against such Loan Party in accordance with the terms thereof subject to the effects of bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights generally and to general equitable principals.

## ARTICLE V.       COVENANTS

In order to induce Agent and Lender to forbear from the exercise of their rights and remedies as set forth above, each Loan Party hereby covenants and agrees with Agent and Lender as follows:

**Section 5.01**     Borrower shall consummate the Bridge Financing and receive immediate access to the cash proceeds therefrom no later than January 31, 2008 or February 29, 2008, in the event the closing of the Bridge Financing is extended.

**Section 5.02**     Borrower shall, and shall cause its Subsidiaries to, continue to perform and observe all terms and conditions contained in the Credit Agreement and other Loan Documents.

**Section 5.03**     Borrower shall reimburse Agent and Lender for all costs and expenses incurred in connection with the negotiation, preparation and enforcement of this Agreement (including, without limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent or any Lender), provided that the costs of negotiation and preparation of this Agreement shall not exceed $_____.

**Section 5.04**     Borrower shall fully and publicly disclose the existence of this agreement and a summary of its terms and conditions ~~the Existing Defaults~~ in compliance with all applicable securities laws.

## ARTICLE VI.       GENERAL RELEASE

In consideration of, among other things, the forbearance provided for herein, and any other financial accommodations which Agent and/or Lender elects to extend to

Borrower, each Loan Party forever waives, releases and discharges any and all claims (including, without limitation, cross-claims, counterclaims, rights of setoff and recoupment), causes of action, demands, suits, costs, expenses and damages that it now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising, whether arising at law or in equity that arise under or relate to any of the Loan Documents or this Agreement or any Person's rights or obligations thereunder (collectively, "*Claims*"), against Agent or Lender, any of such Person's Subsidiaries and affiliates, and its and their respective successors, assigns, officers, directors, employees, agents, attorneys and other representatives (collectively, the "*Lender Releasees*"), based in whole or in part on facts, whether or not known, existing on or prior to the date of this Agreement.  The provisions of this section shall survive the termination of the Credit Agreement and payment in full of the Obligations.

## ARTICLE VII.    MISCELLANEOUS

**Section 7.01    Headings.**  Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

**Section 7.02    Governing Law.**    THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.

**Section 7.03    Counterparts.**  This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

**Section 7.04    Continued Effectiveness.**  Except as expressly set forth in this Agreement, the terms of the Credit Agreement and each of the other Loan Documents remain unchanged, and all such Loan Documents shall remain in full force and effect and are hereby confirmed and ratified.

**Section 7.05    No Novation.**  This Agreement shall not be deemed or construed to be a satisfaction, reinstatement, novation or release of the Credit Agreement or of any of the other Loan Documents, or, except as expressly provided herein, a waiver by Agent or any Lender of any of its rights and remedies under the Credit Agreement or any of the other Loan Documents, or any of them, or at law or in equity.

**Section 7.06    Reaffirmation.**  Each Loan Party signatory hereto hereby reaffirms each and every covenant, condition, obligation and provision set forth in the Loan Documents, as modified hereby.

**Section 7.07    Construction.**    Each Loan Party signatory hereto acknowledges that it has been represented by its own legal counsel in connection its execution of this Agreement and the Loan Documents, that it has exercised independent judgment with respect to this Agreement and the Loan Documents, and that it has not relied on Agent or any Lender or on Agent's or any Lender's counsel for any advice with respect to this Agreement or the Loan Documents. If any provision of this Agreement is found to be unenforceable, such provision shall be limited or deleted to the minimum extent necessary so that the remaining terms remain in full force and effect.

**Section 7.08    Integration; Waivers.**    This Agreement, the Loan Documents and the other written agreements, instruments and documents entered into in connection therewith (collectively, the "*Borrower/Lender Documents*") set forth in full the terms of agreement between the parties with respect to the subject matter thereof and are intended as the full, complete and exclusive contract governing the relationship between the parties with respect thereto, superseding all other discussions, promises, representations, warranties, agreements and understandings between the parties with respect thereto. Any waiver of any condition in, or breach of, any of the foregoing in a particular instance shall not operate as a waiver of other or subsequent conditions or breaches of the same or a different kind. Agent's and each Lender's exercise or failure to exercise any rights under any of the foregoing in a particular instance shall not operate as a waiver of its right to exercise the same or different rights in other instances. Except as expressly provided to the contrary in this Agreement, all the terms, conditions and provisions of the Borrower/Lender Documents shall continue in full force and effect.

**Section 7.09    Consent to Jurisdiction.**    ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH CREDIT PARTY HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS. EACH CREDIT PARTY HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF THE STATE OF NEW YORK AS ITS AGENT FOR SERVICE OF PROCESS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS AND IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE BORROWER AT ITS ADDRESS FOR NOTICES AS SET FORTH IN SECTION 10.01 [NOTICES, ETC.] AND TO THE SECRETARY OF STATE OF THE STATE OF NEW YORK, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE AGENT AND THE LENDER TO SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST ANY LOAN PARTY IN ANY OTHER JURISDICTION. EACH CREDIT PARTY HEREBY

EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  TO THE EXTENT THAT ANY CREDIT PARTY HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, EACH CREDIT PARTY HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.

**Section 7.10    Waiver of Jury Trial.**  EACH CREDIT PARTY, THE AGENT AND THE LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION THEREWITH, OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION, PROCEEDINGS OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  EACH CREDIT PARTY CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS.  EACH CREDIT PARTY HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT AND THE LENDER ENTERING INTO THIS AGREEMENT.

**Section 7.11    Reaffirmation.**  Each Loan Party party hereto has executed and delivered one or more of the Loan Documents as debtor, grantor, pledgor, guarantor, assignor, or in other similar capacities in which such Person has granted liens or security interests in their respective properties or otherwise acted as an accommodation party or guarantor, as the case may be.  Each Loan Party party hereto hereby ratifies and reaffirms all of its respective payment and performance obligations, contingent or otherwise, under the Loan Documents to which it is a party and, to the extent any such Person has granted liens on or security interests in any of their respective properties pursuant to any of the Loan Documents as security for or otherwise guaranteed the Obligations under or with respect to the Agreement or any other Loan Documents, hereby ratifies and reaffirms such payment and performance obligations, guarantee and grant of security interests and liens and confirms and agrees that such security interests and liens hereafter secure all of the Obligations.  Each Loan Party party hereto agrees that each of the Loan Documents remains in full force and effect and is hereby ratified and reaffirmed, and agrees that this Agreement shall not (a)

7

operate as a waiver of any right, power or remedy of Agent or Lender under the Loan Documents or (b) constitute a waiver of any provision of any of the Loan Documents or serve to effect a novation of the Obligations.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above, by their respective duly authorized officers.

BORROWER:                           BUSINESSTALKRADIO.NET, INC.

                                            By:_____
                                            Name:_____
                                            Title:_____

SUBSIDIARIES:

                                            BTR WEST, INC.

                                            By:_____
                                            Name:_____
                                            Title:_____

                                            THE LIFESTYLE TALKRADIO NETWORK, INC.

                                            By:_____
                                            Name:_____
                                            Title:_____

                                            THE GREENWICH BROADCASTING
                                            CORPORATION

                                            By:_____
                                            Name:_____
                                            Title:_____

                                            BTR COMMUNICATIONS BOSTON, INC.

                                            By:_____
                                            Name:_____
                                            Title:_____

                                            BTR GREENWICH, INC.

                                            By:_____
                                            Name:_____
                                            Title:_____

BTR WEST II, INC.

By:_____
Name:_____
Title:_____

BTR COMMUNICATIONS BOSTON II, INC.

By:_____
Name:_____
Title:_____

WURP, INC.

By:_____
Name:_____
Title:_____

WURP EAST, INC.

By:_____
Name:_____
Title:_____

AGENT:                          BC MEDIA FUNDING COMPANY II, LLC

By: _____
        Jacob Barker, Manager

LENDER:                         MEDIA FUNDING COMPANY, LLC

By:_____
Name:_____
Title:_____

## Timothy Olson

| | |
|---|---|
| **From:** | Joseph I. Emas [jiemas@josephiemaspa.com] |
| **Sent:** | Wednesday, December 26, 2007 3:04 PM |
| **To:** | Timothy Olson |
| **Subject:** | RE: BTR Forbearance |
| **Attachments:** | image001.jpg |

**Categories:**      BTR, 1 Barker

Tim:

Thank you for the prompt response. I will forward this to my client for review and comment.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** Timothy Olson [mailto:tpo@barkercap.com]
**Sent:** Wednesday, December 26, 2007 4:01 PM
**To:** jiemas@josephiemaspa.com
**Subject:** RE: BTR Forbearance

Joe,

Thanks for your comments. I have attached a further revised blackline reflecting our comments to the version you distributed. With one exception, we have accepted all of your changes. I also made a few other minor changes in light of your suggestions.

We have not accepted the possible extension for the Bridge Financing. During the negotiations of the business points for this forbearance, a closing of the Bridge Financing by the end of January 2008 was a key component.

Other than that, there remain a few blanks in the agreement for BusinessTalkradio to complete. We'll need to review that information once completed.

If you want to discuss anything, please do not hesitate to contact me.

Thanks,

1

Tim



**Timothy P. Olson**
Managing Director and
General Counsel

BARKER CAPITAL

401 E. 8th Street, Suite 220B
Sioux Falls, SD 57103

p. (605) 338-9609
f. (605) 338-5266
e. **tpo@barkercap.com**

**From:** Joseph I. Emas [mailto:jiemas@josephiemaspa.com]
**Sent:** Wednesday, December 26, 2007 12:58 PM
**To:** Timothy Olson
**Cc:** greenwich4@aol.com
**Subject:** RE: BTR Forbearance

Mr. Barker;

I am assisting BusinessTalkradio.net, Inc. in the preparation of their private placement memorandum. In the course of my representation, i was requested to review the attached Forbearance Agreement. I did not review nor was I council for BusinessTalkradio.net, Inc. in the original underlying agreement.

In my review, I have made a few modifications (in redline). Your review and comments would be appreciated.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Wednesday, December 26, 2007 10:45 AM
**To:** jiemas@josephiemaspa.com
**Subject:** Re: BTR Forbearance

Joe

Tim Olson is Jacob Barker's in house council, His email address is TPO@barkercap.com
his phone number is 605-338 9722

thanks in advance

MM


-----Original Message-----
From: Joseph I. Emas <jiemas@josephiemaspa.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Mon, 24 Dec 2007 12:13 pm
Subject: RE: BTR Forbearance

**Section 1.01        Borrower shall consummate the Bridge Financing and receive immediate access to the cash proceeds therefrom no later than January 31, 2008.**


You may want to provide for an optional 30 extension (just to be safe).



**Section 1.02        Borrower shall, and shall cause its Subsidiaries to, continue to perform and observe all terms and conditions contained in the Credit Agreement and other Loan Documents.**

Section 1.03        Borrower shall reimburse Agent and Lender for all costs and expenses incurred in connection with the negotiation, preparation and enforcement of this Agreement (including, without limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent or any Lender).


Find the the costs and cap this provision so you are not paying any exorbitant "add-on" costs.



**Section 1.04        Borrower shall fully and publicly disclose the existence of the Existing Defaults in compliance with all applicable securities laws.**

change to...

Borrower shall fully and publicly disclose the existence of this agreement and a summary of its terms and conditions in compliance with all applicable securities laws.


Joe

3

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Monday, December 24, 2007 11:31 AM
**To:** jiemas@bellsouth.net; SHOBMP@aol.com
**Subject:** Fwd: BTR Forbearance

Joe

As per our conversation here is a copy of their forebearance agreement.

MM

-----Original Message-----
From: Jacob J. Barker <jjb@barkercap.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Sat, 22 Dec 2007 6:59 pm
Subject: FW: BTR Forbearance

FYI

-----Original Message-----
**From:** Timothy Olson
**Sent:** Friday, December 21, 2007 4:28 PM
**To:** Jacob J. Barker
**Subject:** BTR Forbearance

Jacob,

Here's the draft forbearance agreement. Subject to your comments, it is ready to go to BTR.

Tim

More new features than ever. Check out the new AOL Mail!

4

## Timothy Olson

| | |
|---|---|
| From: | Joseph I. Emas [jiemas@josephiemaspa.com] |
| Sent: | Friday, December 28, 2007 7:52 AM |
| To: | Timothy Olson |
| Subject: | RE: BTR Forbearance |
| Attachments: | image001.jpg |

| | |
|---|---|
| Categories: | BTR |

Tim:

I am sending out the final Agreement. I filled in the blanks (for the $600,000 raise).

One change made, according to my client, at our clients agreement:

**Section 5.03        Borrower shall reimburse Agent and Lender for all costs and expenses incurred in connection with the enforcement of this Agreement (including, without limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent or any Lender).**

**In other words, legal fees and costs etc. only in the event of enforcement.**

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** Timothy Olson [mailto:tpo@barkercap.com]
**Sent:** Wednesday, December 26, 2007 4:01 PM
**To:** jiemas@josephiemaspa.com
**Subject:** RE: BTR Forbearance

Joe,

1

Thanks for your comments. I have attached a further revised blackline reflecting our comments to the version you distributed. With one exception, we have accepted all of your changes. I also made a few other minor changes in light of your suggestions.

We have not accepted the possible extension for the Bridge Financing. During the negotiations of the business points for this forbearance, a closing of the Bridge Financing by the end of January 2008 was a key component.

Other than that, there remain a few blanks in the agreement for BusinessTalkradio to complete. We'll need to review that information once completed.

If you want to discuss anything, please do not hesitate to contact me.

Thanks,
Tim



**Timothy P. Olson**
Managing Director and
General Counsel

401 E. 8th Street, Suite 200B
Sioux Falls, SD  57103

p. (605) 338-9609
f. (605) 338-5266
e. **tpo@barkercap.com**

**From:** Joseph I. Emas [mailto:jiemas@josephiemaspa.com]
**Sent:** Wednesday, December 26, 2007 12:58 PM
**To:** Timothy Olson
**Cc:** greenwich4@aol.com
**Subject:** RE: BTR Forbearance

Mr. Barker;

I am assisting BusinessTalkradio.net, Inc. in the preparation of their private placement memorandum. In the course of my representation, i was requested to review the attached Forbearance Agreement. I did not review nor was I council for BusinessTalkradio.net, Inc. in the original underlying agreement.

In my review, I have made a few modifications (in redline). Your review and comments would be appreciated.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is
PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications
Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use
of the addressee(s) named herein. No part of this document or any attachments may be reproduced or
transmitted without permission from Joseph I. Emas. Thank you for your cooperation

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Wednesday, December 26, 2007 10:45 AM
**To:** jiemas@josephiemaspa.com
**Subject:** Re: BTR Forbearance

Joe

Tim Olson is Jacob Barker's in house council, His email address is TPO@barkercap.com
his phone number is 605-338 9722

thanks in advance

MM

-----Original Message-----
From: Joseph I. Emas <jiemas@josephiemaspa.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Mon, 24 Dec 2007 12:13 pm
Subject: RE: BTR Forbearance

**Section 1.01        Borrower shall consummate the Bridge Financing and receive
immediate access to the cash proceeds therefrom no later than January 31, 2008.**

You may want to provide for an optional 30 extension (just to be safe).

**Section 1.02        Borrower shall, and shall cause its Subsidiaries to, continue to
perform and observe all terms and conditions contained in the Credit Agreement and
other Loan Documents.**

Section 1.03        Borrower shall reimburse Agent and Lender for all costs and expenses incurred in
connection with the negotiation, preparation and enforcement of this Agreement (including, without
limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses
of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent
or any Lender).

Find the the costs and cap this provision so you are not paying any exorbitant "add-on" costs.

3

**Section 1.04     Borrower shall fully and publicly disclose the existence of the Existing Defaults in compliance with all applicable securities laws.**

change to...

Borrower shall fully and publicly disclose the existence of this agreement and a summary of its terms and conditions in compliance with all applicable securities laws.


Joe


Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas. Thank you for your cooperation

---

**From:** greenwich4@aol.com [mailto:greenwich4@aol.com]
**Sent:** Monday, December 24, 2007 11:31 AM
**To:** jiemas@bellsouth.net; SHOBMP@aol.com
**Subject:** Fwd: BTR Forbearance


Joe

As per our conversation here is a copy of their forebearance agreement.

MM

-----Original Message-----
From: Jacob J. Barker <jjb@barkercap.com>
To: greenwich4@aol.com; SHOBMP@aol.com
Sent: Sat, 22 Dec 2007 6:59 pm
Subject: FW: BTR Forbearance

FYI

-----Original Message-----
**From:** Timothy Olson
**Sent:** Friday, December 21, 2007 4:28 PM

**To:** Jacob J. Barker
**Subject:** BTR Forbearance

Jacob,

Here's the draft forbearance agreement.  Subject to your comments, it is ready to go to BTR.

Tim

---

More new features than ever. Check out the new AOL Mail!

**Timothy Olson**

| | |
|---|---|
| **From:** | Joseph I. Emas [jiemas@josephiemaspa.com] |
| **Sent:** | Friday, December 28, 2007 7:53 AM |
| **To:** | Greenwich4@aol.com; Timothy Olson |
| **Cc:** | SHOBMP@aol.com |
| **Subject:** | BTR Forbearance Execution copy |
| **Attachments:** | Forbearance Agreement FINAL.doc |

**Categories:**    BTR

Attached please find the Execution copy of the Forbearance Agreement.

Joe

Joseph I. Emas
Attorney at Law
1224 Washington Avenue
Miami Beach, Florida 33139
(305) 531-1174
(305) 531-1274 (facsimile)
(305) 799-3131 (cell)

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED,
PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections
2510-2521, Federal and State copyright laws, and are intended only for the use of the addressee(s) named herein. No
part of this document or any attachments may be reproduced or transmitted without permission from Joseph I. Emas.
Thank you for your cooperation

1

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "*Agreement*") is dated as of December 28, 2007 and is entered into by and among BusinessTalkradio.net, Inc., a Delaware corporation (the "*Borrower*"), and The Greenwich Broadcasting Corporation, a Connecticut corporation ("*Greenwich*"), The Lifestyle TalkRadio Network, Inc., a Delaware corporation ("*Lifestyle*"), BTR West, Inc., a Nevada corporation ("*BTR West*"), BTR Communications Boston, Inc., a Massachusetts corporation ("*BTR Boston*"), BTR Greenwich, Inc., a Connecticut corporation ("*BTR Connecticut*"), BTR West II, Inc., a Nevada corporation ("*Nevada II*"), BTR Communications Boston II, Inc., a Massachusetts corporation ("*Boston II*"), WURP East, Inc., a Pennsylvania corporation ("*Pittsburgh East*"), WURP, Inc., a Pennsylvania corporation ("*Pittsburgh*", and together with Greenwich, Lifestyle, BTR West, BTR Boston, BTR Connecticut, Nevada II, and Pittsburgh East, the "*Subsidiary Guarantors*"), Media Funding Company, LLC, a Delaware limited liability company (the "*Lender*"), and BC Media Funding Company II, LLC, a Delaware limited liability company, as agent for the Lender (in such capacity, the "*Agent*").

## RECITALS:

WHEREAS, Agent, Lender and Borrower are parties to that certain Financing Agreement dated as of November 13, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*");

WHEREAS, Events of Default have occurred under subsection 8.01(c) of the Credit Agreement in that the Borrower failed to achieve (i) a minimum fixed charge coverage ratio of at least 1.0 to 1.0 in accordance with the requirements of Section 6.03(b) of the Credit Agreement for the 12-month periods ending on January through September 2007; (ii) Consolidated EBITDA in accordance with the requirements of Section 6.03(c) of the Credit Agreement for the quarters ending March 31, 2007, June 30, 2007, and September 30, 2007; and (iii) Net Cash Revenue in accordance with the requirements of Section 6.03(d) of the Credit Agreement for the quarters ending March 31, 2007, June 30, 2007, and September 30, 2007 (such Events of Default, the "*Existing Defaults*"); and

WHEREAS, Agent and Lender are willing to forbear from enforcing their rights that arise because of the Existing Defaults for a limited period of time, provided that Borrower complies with the terms of this Agreement.

1

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I. DEFINITIONS

**Section 1.01** All capitalized terms used herein (including in the introductory paragraph and recitals set forth above) and not otherwise defined shall have the meanings assigned to such terms in the Credit Agreement.

**Section 1.02** The following terms used in this Agreement shall have the meanings set forth below:

"*Bridge Financing*" means that certain financing to be entered into by the Borrower and prospective investors in a principal amount of at least $600,000, to be utilized by the borrower to fund development of the Borrower's website, pay for certain accounting-related services and for certain other working capital purposes, which financing, in all respects, shall be subordinate to the Obligations under the Credit Agreement.

"*Forbearance Default*" means (a) the occurrence of any Default or Event of Default other than the Existing Defaults; (b) the failure of Borrowers to comply with any term, condition or covenant set forth in this Agreement, (c) any representation made by Borrowers under or in connection with this Agreement shall prove to be materially false or misleading as of the date when made or (d) the filing of any petition (voluntary or involuntary) under the insolvency or bankruptcy laws of the United States or any state thereof, or of any foreign jurisdiction, with respect to a Borrower, any of its affiliates, or any of its Subsidiaries.

"*Termination Date*" means the earlier to occur of (a) 5:00 p.m. New York time on March 31, 2008, or (b) the date upon which a Forbearance Default occurs.

## ARTICLE II.    CONFIRMATION BY BORROWERS OF OBLIGATIONS

Each Borrower acknowledges and agrees that as of the date hereof, the Borrowers have no right of offset, defense, or counterclaim with respect to the Obligations.

## ARTICLE III.    AGREEMENT TO FORBEAR; SUBORDINATION AGREEMENT; OTHER AGREEMENTS

**Section 3.01** Provided that no Forbearance Default occurs, Agent and **Lender** hereby agree to refrain, through the Termination Date, from exercising any of their rights and remedies under the Credit Agreement or any of the other Loan Documents that may exist by virtue of the Existing Defaults. If Borrowers comply with

all terms, covenants and conditions set forth in this Agreement, the Agent and Lender agree that the Existing Defaults shall be deemed waived.

**Section 3.02**    Nothing in this Agreement shall be construed as a waiver of or acquiescence to the Existing Defaults which shall continue in existence, subject only to the agreement of Agent and Lender, as set forth herein, not to enforce their remedies for a limited period of time.  Nor shall anything in this Agreement be construed as the Agent's or the Lender's consent to the Bridge Financing, which shall be subject, in all respects, to the approval of the Agent and the Lender in their sole and absolute discretion.  Except as expressly provided herein, the execution and delivery of this Agreement shall not: (a) constitute an extension, modification, or waiver of any aspect of the Credit Agreement or the other Loan Documents; (b) extend the terms of the Credit Agreement or the due date of any of the Obligations; (c) give rise to any obligation on the part of Agent or any Lender to extend, modify or waive any term or condition of the Credit Agreement or any of the other Loan Documents; (d) give rise to any defenses or counterclaims to the right of Agent or Lender to compel payment of the Obligations or to otherwise enforce their rights and remedies under the Credit Agreement and the other Loan Documents; or (e) establish a custom or course of dealing between or among the Borrowers, the Agent and/or the Lender, or any of them. Except as expressly limited herein, Agent and Lender hereby expressly reserve all of their rights and remedies under the Credit Agreement and the other Loan Documents and under applicable law with respect to the Existing Defaults. From and after the Termination Date, Agent and Lender shall be entitled to enforce the Credit Agreement and other Loan Documents according to the original terms thereof.

**Section 3.03**    Provided that no Forbearance Default occurs, the parties hereto hereby agree that Borrower shall not be required to make the principal amortization payment of $75,000 required on December 31, 2007, and the principal amortization payment of $3,000 required on February 28, 2008.

**Section 3.04**    The parties hereto hereby agree that, effective as of and retroactive to December 1, 2007, the Payment-in-Kind Interest Rate shall be increased by 300 basis points so that the Payment-in-Kind Interest Rate is 4.50% per annum.

## ARTICLE IV.    REPRESENTATIONS AND WARRANTIES

In consideration of the limited agreement of Agent and Lender to forbear from the exercise of their rights and remedies as set forth above, each Loan Party jointly and severally hereby represents and warrants to Agent and Lender as of the date hereof as follows:

**Section 4.01**    Borrowers has made full disclosure to Agent and Lender of all Existing Defaults and Events of Default and all other disclosures as is required under subsection 6.01(a)(ix) of the Credit Agreement.

3

**Section 4.02**        The execution, delivery and performance of this Agreement by each Loan Party are within such Person's corporate power and have been duly authorized by all necessary corporate action.

**Section 4.03**        This Agreement constitutes a valid and legally binding Agreement enforceable against each Loan Party in accordance with its terms, subject to the effects of bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights generally and to general equitable principals.

**Section 4.04**        All Loan Documents, including without limitation the Credit Agreement, constitute valid and legally binding obligations of each Loan Party thereto, enforceable against such Loan Party in accordance with the terms thereof subject to the effects of bankruptcy, insolvency, fraudulent conveyance and other laws affecting creditors' rights generally and to general equitable principals.

## ARTICLE V.        COVENANTS

In order to induce Agent and Lender to forbear from the exercise of their rights and remedies as set forth above, each Loan Party hereby covenants and agrees with Agent and Lender as follows:

**Section 5.01**        Borrower shall consummate the Bridge Financing and receive immediate access to the cash proceeds therefrom no later than January 31, 2008.

**Section 5.02**        Borrower shall, and shall cause its Subsidiaries to, continue to perform and observe all terms and conditions contained in the Credit Agreement and other Loan Documents.

**Section 5.03**        Borrower shall reimburse Agent and Lender for all costs and expenses incurred in connection with the enforcement of this Agreement (including, without limitation, reasonable attorneys' fees and legal expenses, which may consist of fees and legal expenses of outside counsel retained by Agent or any Lender or the allocated costs of in-house counsel of Agent or any Lender).

**Section 5.04**        Borrower shall fully and publicly disclose the existence of this agreement and a summary of its terms and conditions in compliance with all applicable securities laws.

## ARTICLE VI.        GENERAL RELEASE

In consideration of, among other things, the forbearance provided for herein, and any other financial accommodations which Agent and/or Lender elects to extend to Borrower, each Loan Party forever waives, releases and discharges any and all claims (including, without limitation, cross-claims, counterclaims, rights of setoff and

4

recoupment), causes of action, demands, suits, costs, expenses and damages that it now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising, whether arising at law or in equity that arise under or relate to any of the Loan Documents or this Agreement or any Person's rights or obligations thereunder (collectively, "*Claims*"), against Agent or Lender, any of such Person's Subsidiaries and affiliates, and its and their respective successors, assigns, officers, directors, employees, agents, attorneys and other representatives (collectively, the "*Lender Releasees*"), based in whole or in part on facts, whether or not known, existing on or prior to the date of this Agreement.  The provisions of this section shall survive the termination of the Credit Agreement and payment in full of the Obligations.

## ARTICLE VII.    MISCELLANEOUS

**Section 7.01    Headings.**  Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

**Section 7.02    Governing Law.**  THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.

**Section 7.03    Counterparts.**  This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

**Section 7.04    Continued Effectiveness.**  Except as expressly set forth in this Agreement, the terms of the Credit Agreement and each of the other Loan Documents remain unchanged, and all such Loan Documents shall remain in full force and effect and are hereby confirmed and ratified.

**Section 7.05    No Novation.**  This Agreement shall not be deemed or construed to be a satisfaction, reinstatement, novation or release of the Credit Agreement or of any of the other Loan Documents or, except as expressly provided herein, a waiver by Agent or any Lender of any of its rights and remedies under the Credit Agreement or any of the other Loan Documents, or any of them, or at law or in equity.

**Section 7.06    Reaffirmation.**  Each Loan Party signatory hereto hereby reaffirms each and every covenant, condition, obligation and provision set forth in the Loan Documents, as modified hereby.

**Section 7.07    Construction.**  Each Loan Party signatory hereto acknowledges that it has been represented by its own legal counsel in connection its execution of this Agreement and the Loan Documents, that it has exercised independent

judgment with respect to this Agreement and the Loan Documents, and that it has not relied on Agent or any Lender or on Agent's or any Lender's counsel for any advice with respect to this Agreement or the Loan Documents.  If any provision of this Agreement is found to be unenforceable, such provision shall be limited or deleted to the minimum extent necessary so that the remaining terms remain in full force and effect.

**Section 7.08    Integration; Waivers.**    This Agreement, the Loan Documents and the other written agreements, instruments and documents entered into in connection therewith (collectively, the "*Borrower/Lender Documents*") set forth in full the terms of agreement between the parties with respect to the subject matter thereof and are intended as the full, complete and exclusive contract governing the relationship between the parties with respect thereto, superseding all other discussions, promises, representations, warranties, agreements and understandings between the parties with respect thereto.  Any waiver of any condition in, or breach of, any of the foregoing in a particular instance shall not operate as a waiver of other or subsequent conditions or breaches of the same or a different kind.  Agent's and each Lender's exercise or failure to exercise any rights under any of the foregoing in a particular instance shall not operate as a waiver of its right to exercise the same or different rights in other instances. Except as expressly provided to the contrary in this Agreement, all the terms, conditions and provisions of the Borrower/Lender Documents shall continue in full force and effect.

**Section 7.09    Consent to Jurisdiction.**    ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH CREDIT PARTY HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.    EACH CREDIT PARTY HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF THE STATE OF NEW YORK AS ITS AGENT FOR SERVICE OF PROCESS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS AND IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE BORROWER AT ITS ADDRESS FOR NOTICES AS SET FORTH IN SECTION 10.01 [NOTICES, ETC.] AND TO THE SECRETARY OF STATE OF THE STATE OF NEW YORK, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE AGENT AND THE LENDER TO SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST ANY LOAN PARTY IN ANY OTHER JURISDICTION.  EACH CREDIT PARTY HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN

ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THAT ANY CREDIT PARTY HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, EACH CREDIT PARTY HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.

**Section 7.10** **Waiver of Jury Trial.** EACH CREDIT PARTY, THE AGENT AND THE LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION THEREWITH, OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION, PROCEEDINGS OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH CREDIT PARTY CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH CREDIT PARTY HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT AND THE LENDER ENTERING INTO THIS AGREEMENT.

**Section 7.11** **Reaffirmation.** Each Loan Party has executed and delivered one or more of the Loan Documents as debtor, grantor, pledgor, guarantor, assignor, or in other similar capacities in which such Person has granted liens or security interests in their respective properties or otherwise acted as an accommodation party or guarantor, as the case may be. Each Loan Party hereby ratifies and reaffirms all of its respective payment and performance obligations, contingent or otherwise, under the Loan Documents to which it is a party and, to the extent any such Person has granted liens on or security interests in any of their respective properties pursuant to any of the Loan Documents as security for or otherwise guaranteed the Obligations under or with respect to the Agreement or any other Loan Documents, hereby ratifies and reaffirms such payment and performance obligations, guarantee and grant of security interests and liens and confirms and agrees that such security interests and liens hereafter secure all of the Obligations. Each Loan Party agrees that each of the Loan Documents remains in full force and effect and is hereby ratified and reaffirmed, and agrees that this Agreement shall not (a) operate as a waiver of any right, power or remedy of Agent or Lender under the Loan Documents or (b) constitute a waiver of any provision of any of the Loan Documents or serve to effect a novation of the Obligations.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above, by their respective duly authorized officers.

BORROWER:                           BUSINESSTALKRADIO.NET, INC.

                                    By:_____
                                    Name:_____
                                    Title:_____

SUBSIDIARIES:

                                    BTR WEST, INC.

                                    By:_____
                                    Name:_____
                                    Title:_____

                                    THE LIFESTYLE TALKRADIO NETWORK, INC.

                                    By:_____
                                    Name:_____
                                    Title:_____

                                    THE GREENWICH BROADCASTING
                                    CORPORATION

                                    By:_____
                                    Name:_____
                                    Title:_____

                                    BTR COMMUNICATIONS BOSTON, INC.

                                    By:_____
                                    Name:_____
                                    Title:_____

                                    BTR GREENWICH, INC.

                                    By:_____
                                    Name:_____
                                    Title:_____

BTR WEST II, INC.

By:_____
Name:_____
Title:_____

BTR COMMUNICATIONS BOSTON II, INC.

By:_____
Name:_____
Title:_____

WURP, INC.

By:_____
Name:_____
Title:_____

WURP EAST, INC.

By:_____
Name:_____
Title:_____

AGENT:                          BC MEDIA FUNDING COMPANY II, LLC

By: _____
    Jacob Barker, Manager

LENDER:                         MEDIA FUNDING COMPANY, LLC

By:_____
Name:_____
Title:_____

SIGNATURE PAGE TO FORBEARANCE AGREEMENT

**Timothy Olson**
_____

| | |
|---|---|
| **From:** | Nugent, Shanna [snugent@AkinGump.com] |
| **Sent:** | Tuesday, October 02, 2007 6:32 PM |
| **To:** | Turinas, Alice W. |
| **Cc:** | Timothy Olson; Blue, Eric |
| **Subject:** | First Amendment and Waiver |
| **Attachments:** | WEST-#6141006-v3-BTR_Closing_Checklist_(Pittsburgh_Acquisition).DOC; WEST-# 6144418-v1-First_Amendment_and_Limited_Waiver_to_BTR_Credit.DOC |

| | |
|---|---|
| **Categories:** | BTR, 1 Barker |


Alice,

Attached is a draft of the First Amendment and Waiver to the Financing Agreement for BTR.  Please review  and let me know if you have any comments thereto.  Also, attached is a draft closing checklist.

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

_____

IRS Circular 230 Notice Requirement: This communication is not given in the form of a
covered opinion, within the meaning of Circular 230 issued by the United States Secretary
of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax
advice contained in this communication for the purpose of avoiding United States federal
tax penalties. In addition, any tax advice contained in this communication may not be
used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication
in error, please notify us immediately by e-mail, and delete the original message.

## Timothy Olson

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Thursday, October 04, 2007 3:12 PM |
| **To:** | Nugent, Shanna |
| **Cc:** | Timothy Olson; Blue, Eric |
| **Subject:** | RE: First Amendment and Waiver |
| | |
| **Categories:** | BTR, 1 Barker |

Hi, Shanna,

Just to give you a heads-up, my few comments on the amendment will be word processed tonight, and I should be able to get a redlined copy to you tomorrow, together with an initial draft of the schedules (which will be redlined to show any additions to the schedules for the original financing statement). Also, thanks for the closing checklist. I'll try to review it by the time I'm ready to send the redlines, and if I get that done, my comments, if any, will also be emailed. Would you like me to cc Tim and Eric when I send?
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 02, 2007 7:32 PM
**To:** Turinas, Alice W.
**Cc:** Timothy Olson; Blue, Eric
**Subject:** First Amendment and Waiver

Alice,

Attached is a draft of the First Amendment and Waiver to the Financing Agreement for BTR.  Please review  and let me know if you have any comments thereto.  Also, attached is a draft closing checklist.

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication
in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this Electronic mail message is attorney privileged and confidential information
intended only for the use of the individual or entity named above. Such information also is intended to be
privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not
the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby
notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have
received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. tax advice contained in this communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/

**Timothy Olson**

| | |
|---|---|
| **From:** | Jacob J. Barker |
| **Sent:** | Thursday, October 04, 2007 4:53 PM |
| **To:** | Timothy Olson |
| **Subject:** | FW: Barker Capital: More documents to cover the Pittsburgh acquisition |

**Categories:** BTR, 1 Barker

Jacob J. Barker
(917) 612-5693

-----Original Message-----
From:    greenwich4@aol.com [mailto:greenwich4@aol.com]
Sent:    Thursday, October 04, 2007 05:45 PM Eastern Standard Time
To:      ATURINAS@seidenwayne.com; Jacob J. Barker; SHOBMP@aol.com
Subject: Re: Barker Capital: More documents to cover the Pittsburgh acquisition

Alice

I am happy to sign the papers as per the agreement. Remember and please point this out to Jacob  and his associates that the legal fees should not cost as much as the station which only cost $235,000

Best

MM

-----Original Message-----
From: Turinas, Alice W. <ATURINAS@seidenwayne.com>
To: mmetter@businesstalkradio.net
Cc: Oberdorf, William P. <WPO@seidenwayne.com>
Sent: Thu, 4 Oct 2007 4:43 pm
Subject: Barker Capital: More documents to cover the Pittsburgh acquisition

Hi, Michael,

The two subsidiaries formed to hold the Pittsburgh station assets and the FCC license, respectively, will be required under the Barker financing agreement to execute the same group of subsidiary guarantees and security agreement that the other BTR subs signed in November 2006.  BTR will also be required to pledge its shares in the new subs, as it has done for the others. Barker Capital will be requesting certificates of insurance, information re new bank accounts for WLPF (if any), and some good standing certificates. For the insurance certificate and the bank account information, should I contact Joy Marshall?
There will be quite a few papers to sign, and it's unclear when Akin will have them ready. If you are planning on a heavy travel schedule in any of the next few weeks, please let me know so we can plan around that.
Thanks,
Alice
Alice W. Turinas
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105

1

(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

The information contained in this Electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.
IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
http://www.seidenwayne.com/

_____

Email and AIM finally together. You've gotta check out free AOL Mail
<http://o.aolcdn.com/cdn.webmail.aol.com/mailtour/aol/en-us/index.htm?ncid=AOLAOF00020000000970> !

**Timothy Olson**

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Friday, October 05, 2007 3:16 PM |
| **To:** | Nugent, Shanna |
| **Cc:** | Timothy Olson; Blue, Eric; mmetter@businesstalkradio.net |
| **Subject:** | RE: First Amendment and Waiver - Comments |
| **Attachments:** | First Amendment and Limited Waiver to Financing Agreement.DOC; First Amendment and Limited Waiver to Financing Agreement Redline1_3.rtf.DOC |
| | |
| **Categories:** | BTR, 1 Barker |

Shanna,

I've attached a redlined and clean copy of comments to the First Amendment and Waiver to the Financing Agreement.  As noted in the draft, I need to check with BTR on a few things, including whether there is a separate, new bank account for the BTR subsidiary that holds the tangible assets of the Pittsburgh station.  For that reason, I'll wait to send drafts of the amended and restated schedules to this agreement until I have the information I need from BTR.  I'll separately send any comments on the closing checklist once I've reviewed it in detail.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 02, 2007 7:32 PM
**To:** Turinas, Alice W.
**Cc:** Timothy Olson; Blue, Eric
**Subject:** First Amendment and Waiver

Alice,

Attached is a draft of the First Amendment and Waiver to the Financing Agreement for BTR.  Please review  and let me know if you have any comments thereto.  Also, attached is a draft closing checklist.

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal

tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this Electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/

2

**Timothy Olson**

| | |
|---|---|
| **From:** | Nugent, Shanna [snugent@AkinGump.com] |
| **Sent:** | Thursday, October 11, 2007 11:23 AM |
| **To:** | Turinas, Alice W. |
| **Cc:** | Timothy Olson; Blue, Eric |
| **Subject:** | BTR |
| **Attachments:** | WEST-#6144418-vdoc-First_Amendment_and_Limited_Waiver_to_BTR_Credit.DOC; WEST-#6144418-v3-First_Amendment_and_Limited_Waiver_to_BTR_Credit.DOC; WEST-#6150892-v2-Joinder_Agreement.DOC; WEST-#6141006-v4-BTR_Closing_Checklist_(Pittsburgh_Acquisition).DOC; WEST-#6050536-v2-BTR-WURP_Inc__Solvency_Certificate.DOC; WEST-#6050535-v3-BTR-WURP_East__Inc__Solvency_Certificate.DOC; WEST-#6145490-v2-Barker_Capital__BTR_Security_Agreement_(Pittsburgh_Acquisition).DOC; WEST-#6150367-v1-BTR--First_Amendment_to_the_Pledge_Agreement.DOC |
| **Categories:** | BTR, 1 Barker |

Alice,

Attached are the following documents.  Please review and let me know if you have any comments.

(1) revised First Amendment and corresponding redline
(2) First Amendment to the Pledge Agreement
(3) Security Agreement
(4) Joinder Agreement
(5) Solvency Cert for WURP, Inc.
(6) Solvency Cert for WURP East, Inc.

Please note that in the interest of time these documents are being distributed to you as well as my client simultaneously and as such are subject to further review and revision.

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**Timothy Olson**

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Tuesday, October 23, 2007 11:44 AM |
| **To:** | Nugent, Shanna |
| **Cc:** | Wilbon, Tammy; Timothy Olson |
| **Subject:** | RE: BTR Amendment |
| **Attachments:** | Resolutions BTR Board 8-27-07 .PDF; BTR Writen Consent of the Shareholders of BTR .DOC |

| | |
|---|---|
| **Categories:** | BTR, 1 Barker |

---

**From:** Turinas, Alice W.
**Sent:** Tuesday, October 23, 2007 12:41 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** RE: BTR Amendment

Hi, Shanna,

I followed up with the client, and hope to have any updating information for the Schedules to the First Amendment soon. I'll get back to you about 2 and 3. Will check with another contact at the client re item 4. Have attached resolutions for your review.
For the legal opinion, do you want an opinion on execution and delivery, authorization and enforceability?
Alice

---

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 23, 2007 1:47 AM
**To:** Turinas, Alice W.
**Cc:** Wilbon, Tammy; Timothy Olson
**Subject:** BTR Amendment

Alice,

Any updates on the BTR amendments and ancillary documents sent to you on Wednesday Octobe 17th?

We are still waiting to see the following from you:
1.   Schedules for the First Amendment & Limited Waiver to Credit Agreement
2.   Schedules to the Amendment to the Pledge and Security Agreement, and
3.   Schedules to the  Security Agreement;
4.   Insurance Certificates and Endorsements adding the two new entities;
5.   Resolutions; and
6.   Draft of the Legal Opinion

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218

1

Fax: (214)-969-4343
snugent@akingump.com

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a
covered opinion, within the meaning of Circular 230 issued by the United States Secretary
of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax
advice contained in this communication for the purpose of avoiding United States federal
tax penalties. In addition, any tax advice contained in this communication may not be
used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication
in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this Electronic mail message is attorney privileged and confidential information
intended only for the use of the individual or entity named above. Such information also is intended to be
privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not
the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby
notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have
received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. tax advice contained in this communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/

**Timothy Olson**

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Wednesday, October 24, 2007 2:45 PM |
| **To:** | Nugent, Shanna |
| **Cc:** | Wilbon, Tammy; Timothy Olson |
| **Subject:** | Schedules to Security Agreement RE: BTR Amendment |
| **Attachments:** | Security_Agreement_ Schedules .DOC.DOC |
| | |
| **Categories:** | BTR, 1 Barker |

Shanna,

Attached is an initial draft of schedules to the Security Agreement, which is subject to review and updating by BTR.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Tuesday, October 23, 2007 12:41 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** RE: BTR Amendment

Hi, Shanna,

I followed up with the client, and hope to have any updating information for the Schedules to the First Amendment soon.
I'll get back to you about 2 and 3. Will check with another contact at the client re item 4. Have attached resolutions for your review.
For the legal opinion, do you want an opinion on execution and delivery, authorization and enforceability?
Alice

---

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 23, 2007 1:47 AM
**To:** Turinas, Alice W.
**Cc:** Wilbon, Tammy; Timothy Olson
**Subject:** BTR Amendment

Alice,

Any updates on the BTR amendments and ancillary documents sent to you on Wednesday Octobe 17th?

We are still waiting to see the following from you:
1.   Schedules for the First Amendment & Limited Waiver to Credit Agreement
2.   Schedules to the Amendment to the Pledge and Security Agreement, and
3.   Schedules to the  Security Agreement;
4.   Insurance Certificates and Endorsements adding the two new entities;

1

5.    Resolutions; and
6.    Draft of the Legal Opinion

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

The information contained in this Electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. tax advice contained in this communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/

## Timothy Olson

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Wednesday, October 24, 2007 2:54 PM |
| **To:** | Nugent, Shanna |
| **Cc:** | Wilbon, Tammy; Timothy Olson |
| **Subject:** | Schedules to 1st Amendment & Waiver RE: BTR Amendment |
| **Attachments:** | Financing_Agreement_Schedules .DOC.DOC; Schedules to 1st Amend & Ltd Waiver Redline Financing Agmt Scheds.rtf.DOC |

| | |
|---|---|
| **Categories:** | BTR, 1 Barker |

Shanna,
I've attached a clean and marked copy of Schedules to the First Amendment and Limited
Waiver to [Credit (should this be Financing?)] Agreement. As with the others, I am waiting for BTR to review and update th
em, so this draft is subject to any comments BTR may have.
Please note that the marked copy has been redlined against what I believe to be the definitive version of the Schedules to
the Financing Agreement. As a backstop, you may want to run a redline of the clean copy against the final copy of the
schedules that is on your firm's system.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Wednesday, October 24, 2007 3:45 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** Schedules to Security Agreement RE: BTR Amendment

Shanna,

Attached is an initial draft of schedules to the Security Agreement, which is subject to review and updating by BTR.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Tuesday, October 23, 2007 12:41 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** RE: BTR Amendment

Hi, Shanna,

I followed up with the client, and hope to have any updating information for the Schedules to the First Amendment soon. I'll get back to you about 2 and 3. Will check with another contact at the client re item 4. Have attached resolutions for your review.
For the legal opinion, do you want an opinion on execution and delivery, authorization and enforceability?
Alice

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 23, 2007 1:47 AM
**To:** Turinas, Alice W.
**Cc:** Wilbon, Tammy; Timothy Olson
**Subject:** BTR Amendment

Alice,

Any updates on the BTR amendments and ancillary documents sent to you on Wednesday Octobe 17th?

We are still waiting to see the following from you:
1.    Schedules for the First Amendment & Limited Waiver to Credit Agreement
2.    Schedules to the Amendment to the Pledge and Security Agreement, and
3.    Schedules to the  Security Agreement;
4.    Insurance Certificates and Endorsements adding the two new entities;
5.    Resolutions; and
6.    Draft of the Legal Opinion

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this Electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that

any U.S. tax advice contained in this communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/

**Timothy Olson**

| | |
|---|---|
| **From:** | Turinas, Alice W. [ATURINAS@seidenwayne.com] |
| **Sent:** | Wednesday, October 24, 2007 3:22 PM |
| **To:** | Nugent, Shanna |
| **Cc:** | Wilbon, Tammy; Timothy Olson |
| **Subject:** | 1st Amendment & Waiver RE: BTR Amendment: one comment |
| **Attachments:** | First Amendment and Limited Waiver to Financing Agreement.DOC; First Amendment and Limited Waiver Redline3_4.rtf.DOC |
| | |
| **Categories:** | BTR, 1 Barker |

Shanna,

I've attached a clean and marked copy of my comments on the First Amendment and Limited Waiver to Financing Agreement. My only comment is in Section 4.5(a)(xii) (page 6 of the clean copy). Having undergone the expense of incorporating several NY corporations, for which subscriptions have not yet been made and thus no stock has been issued, BTR would prefer to keep them as shell corporations for a while, in case there is a subsequent use for them, rather than undergo the expense to dissolve each one.
Please phone me if you'd like to discuss.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Wednesday, October 24, 2007 3:54 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** Schedules to 1st Amendment & Waiver RE: BTR Amendment

Shanna,
I've attached a clean and marked copy of Schedules to the First Amendment and Limited
Waiver to [Credit (should this be Financing?)] Agreement. As with the others, I am waiting for BTR to review and update th
em, so this draft is subject to any comments BTR may have.
Please note that the marked copy has been redlined against what I believe to be the definitive version of the Schedules to
the Financing Agreement. As a backstop, you may want to run a redline of the clean copy against the final copy of the
schedules that is on your firm's system.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Wednesday, October 24, 2007 3:45 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** Schedules to Security Agreement RE: BTR Amendment

Shanna,

Attached is an initial draft of schedules to the Security Agreement, which is subject to review and updating by BTR.
Alice

**Alice W. Turinas**
Counsel
Seiden Wayne LLC
Two Penn Plaza East
Newark, NJ 07105
(973) 491-3514
fax (973) 491-3487
aturinas@seidenwayne.com

---

**From:** Turinas, Alice W.
**Sent:** Tuesday, October 23, 2007 12:41 PM
**To:** 'Nugent, Shanna'
**Cc:** 'Wilbon, Tammy'; 'Timothy Olson'
**Subject:** RE: BTR Amendment

Hi, Shanna,

I followed up with the client, and hope to have any updating information for the Schedules to the First Amendment soon.
I'll get back to you about 2 and 3. Will check with another contact at the client re item 4. Have attached resolutions for your review.
For the legal opinion, do you want an opinion on execution and delivery, authorization and enforceability?
Alice

---

**From:** Nugent, Shanna [mailto:snugent@AkinGump.com]
**Sent:** Tuesday, October 23, 2007 1:47 AM
**To:** Turinas, Alice W.
**Cc:** Wilbon, Tammy; Timothy Olson
**Subject:** BTR Amendment

Alice,

Any updates on the BTR amendments and ancillary documents sent to you on Wednesday Octobe 17th?

We are still waiting to see the following from you:
1.    Schedules for the First Amendment & Limited Waiver to Credit Agreement
2.    Schedules to the Amendment to the Pledge and Security Agreement, and
3.    Schedules to the  Security Agreement;
4.    Insurance Certificates and Endorsements adding the two new entities;
5.    Resolutions; and
6.    Draft of the Legal Opinion

Thanks,

**Shanna L. Nugent**
Akin Gump Strauss Hauer & Feld LLP

2

1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214)-969-4218
Fax: (214)-969-4343
snugent@akingump.com

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this Electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

http://www.seidenwayne.com/