```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BC MEDIA FUNDING COMPANY II and MEDIA       :    ECF CASE
FUNDING COMPANY,                            :    08-CV-06228 (RPP) (RLE)
                                            :
                        Plaintiffs,         :
                                            :
        -against-                           :
                                            :
FRANK LAZAUSKAS, MICHAEL L. METTER,         :
LEONARD F. MOSCATI and B. MICHAEL PISANI,   :
                        Defendants.         :
                                            :
------------------------------------------------------------------------x
```

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212)294-6700
Anthony DiSarro
Kara L. Gorycki
adisarro@winston.com
kgorycki@winston.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………………ii

POINT I

      THE UNCONDITIONAL GUARANTEES SIGNED BY DEFENDANTS
      PRECLUDE DEFENDANTS' ASSERTION OF ANY DEFENSE
      IN THIS ACTION……………………………………………………………………...1

POINT II

      EVEN IF DEFENDANTS COULD ASSERT A DEFENSE IN THIS ACTION
      THEY HAVE NOT PROVIDED EVIDENCE WHICH WOULD WARRANT
      DENIAL OF PLAINTIFFS' SUMMARY JUDGMENT MOTION…………………….....3

            A.    Defendants Have Provided Insufficient Evidence Concerning
                   Fraud In The Inducement……………………………………………….3

                   1.    The Parol Evidence Rule Precludes Mr. Metter From
                        Claiming Reliance On Statements Allegedly Made At
                        The Time Of The BTR Closing…………………………………...4

                   2.    Even If Mr. Metter's Evidence Could Be Considered On This
                        Motion It Does Not Raise An Issue Of Fact That Would
                        Warrant Denial Of Plaintiffs' Summary Judgment Motion……….6

            B.    Mr. Metter Has Provided Insufficient Evidence Of Duress……………….8

POINT III

      DEFENDANTS' DEFAULTS UNDER THE FINANCING AGREEMENT ARE
      NOT EXCLUSIVE TO THE FINANCIAL COVENANTS……………………………...9

CONCLUSION…………………………………………………………………………………..11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Braten v. Bankers Trust Co.*,
   468 N.Y.S.2d 861, 456 N.E.2d 802 (App. Div. 2d Dep't 1983) ................................................. 4

*Chase Manhattan Bank v. Goldberger*,
   199 A.D.2d 97, 605 N.Y.S.2d 59 (App. Div. 1st Dep't 1993) ............................................... 4,5

*Citibank, N.A. v. Plapinger*,
   495 N.Y.S.2d 309, 485 N.E.2d 974 (Ct. App. 1985) ............................................................ 1, 2

*Citizens Fidelity Bank v. Coulston Int'l Corp.*,
   160 A.D.2d 1110, 553 N.Y.S.2d 901 (App. Div. 3d Dep't 1990) ............................................. 4

*Finserv Computer Corp. v. Bibliographic Retrieval Servs.*,
   125 A.D.2d 765, 509 N.Y.S.2d 187 (App. Div. 3d Dep't 1986) ............................................... 8

*General Bank v. Mark II Imports, Inc.*,
   293 A.D.2d 328, 741 N.Y.S.2d 201 (App. Div. 1st Dep't 2002) .............................................. 5

*In re Boco Enters.*,
   204 B.R. 407 (S.D.N.Y. 1998) ................................................................................................. 1

*Kiska Construction Corp. v. G&G Steel, Inc.*,
   No. 04-civ-9252, 2005 WL 1225944 (S.D.N.Y. May 20, 2005) ............................................. 8

*Mastan Company, Inc. v, Weil*,
   84 A.D.2d 657, 444 N.Y.S.2d 315 (App. Div. 3d Dep't 1981) ................................................ 4

*Muller Constr. Co. v. New York Tel. Co.*,
   309 N.Y.S.2d 817, 817, 359 N.E.2d 328, 328 (Ct. App. 1976) ............................................... 8

*Newcourt Small Business Lending Corp. v. Grillers Casual Dining Group*,
   284 A.D.2d 681, 727 N.Y.S.2d 699 (App. Div. 3d Dep't 2001) .......................................... 2, 4

*Orix Credit Alliance, Inc. v. Bell Realty, Inc.*,
   No. 93-cv-4949, 1995 WL 505891 (S.D.N.Y. Aug. 23, 1995) ................................................ 9

**STATUTES**

CPLR § 3213 (McKinney 2008) ...................................................................................................... 4

# POINT I

## THE UNCONDITIONAL GUARANTEES SIGNED BY DEFENDANTS PRECLUDE DEFENDANTS' ASSERTION OF ANY DEFENSE IN THIS ACTION

As a matter of law, neither Mr. Metter nor the other Defendants can offer any defense that would warrant the denial of Plaintiffs' summary judgment motion because the individual guarantees signed by them are absolute and unconditional, and the very language of those guarantees waives any defense to their enforcement. The individual guarantees signed by Defendants state:

> [T]he obligations, liabilities, agreements, and duties of Guarantor under this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any or all of the following...:
>
> (iv) The invalidity, deficiency, illegality or unenforceability of any of the Guaranteed Obligations or the Obligation Documents, in whole or in part, any bar by any statute of limitations or other law of recovery on any of the Guaranteed Obligations, or any defense or excuse for failure to perform on account of force majeure, act of God, casualty, impossibility, impracticability **or any other defense or excuse whatsoever.**

(*See* Reply Declaration of Timothy P. Olson, dated August 13, 2007 ("Olson Declaration") ¶ 11; Affidavit of Timothy P. Olson, sworn to on June 5, 2008 ("6/5/08 Olson Affidavit"), Exhibit C, Section 2(b)(iv)) (emphasis added). Thus, under the terms of the guarantees signed by the Defendants neither a defense based on an alleged mistake in one of the obligation documents, such as the Financing Agreement, nor any other defense, including fraud or duress, would excuse the Defendants from their obligations under the guarantees.

"New York courts recognize and enforce absolute and unconditional guarantees which specifically preclude guarantors from asserting any defenses." *In re Boco Enters.*, 204 B.R. 407, 415 (S.D.N.Y. 1998) (holding guarantors liable where unconditional guarantee waived all defenses); *see Citibank, N.A. v. Plapinger*, 495 N.Y.S.2d 309, 312, 485 N.E.2d 974, 977 (Ct.

App. 1985) (same); *Newcourt Small Business Lending Corp. v. Grillers Casual Dining Group*, 284 A.D.2d 681, 683, 727 N.Y.S.2d 699, 701 (App. Div. 3d Dep't 2001) ("The unconditional nature of these guarantees precludes these…defendants from relying on a defense of fraud in the inducement."). For instance, in *Plapinger*, the seminal New York case regarding the enforceability of waivers in guarantees, the absolute and unconditional guarantee signed by the defendants was identical to the guarantees signed in this action – it contained a provision which deemed the guarantee to be unconditional irrespective of the validity of other agreements relating to the guarantee or "'any other circumstance which might otherwise constitute a defense' to the guarantee." *Plapinger*, 495 N.Y.S.2d at 312, 485 N.E.2d at 977. The New York Court of Appeals held that this language precluded the assertion of any defenses, including fraudulent inducement, that would prevent enforcement of the guarantee. *Id.* The *Plapinger* Court also considered the fact that the guarantees "followed extended negotiations between sophisticated businesspeople what has been hammered out is a multimillion dollar personal guarantee proclaimed to be 'absolute and unconditional.'" *Id.*

Here, Defendants, who were certainly sophisticated businesspeople, willingly executed unconditional guarantees that waived Defendants' rights to assert any defenses against their enforcement. Moreover, Mr. Metter, who complains that he was fraudulently induced to enter into the transaction, was represented by counsel who was sent a draft of the Financing Agreement prior to closing. (Declaration of Dale E. Norton III, dated August 13, 2007 ("Norton Decl.") ¶ 8; Olson Decl. ¶ 7). This agreement went through twenty drafts prior to closing. (Olson Decl. ¶ 7). Indeed, correspondence between the parties throughout the course of Plaintiffs' relationship with BTR shows that Mr. Metter was active in reviewing and commenting

2

on various agreements, as well as ensuring that these agreements were reviewed by an attorney. (Norton Decl. ¶¶ 8-9; Olson Decl. ¶¶ 3-4, Exs. A-B).

The guarantees executed by Defendants are enforceable under New York law and preclude the assertion of any defenses to Plaintiffs' summary judgment motion. Plaintiffs' motion should therefore be granted.

## POINT II

### EVEN IF DEFENDANTS COULD ASSERT A DEFENSE IN THIS ACTION THEY HAVE NOT PROVIDED EVIDENCE WHICH WOULD WARRANT DENIAL OF PLAINTIFFS' SUMMARY JUDGMENT MOTION

Mr. Metter's declaration asserts two arguments against enforcement of the guarantees in this action. The first argument, which he appears to assert on behalf of all Defendants, is that he was fraudulently induced into entering into the BTR loan agreement at the time of the closing.[1] (Metter Decl. ¶¶ 28-34). The second argument, which he admits is not asserted on behalf of the other defendants, is that he was under duress when he signed the Forbearance Agreement entered into by the parties in October 2007. (*Id.* ¶ 36 (b)).

### A. Defendants Have Provided Insufficient Evidence Concerning Fraud In The Inducement

Mr. Metter's allegation that he was fraudulently induced to enter into the BTR loan agreements raises no issue of material fact that would warrant the denial of Plaintiffs' summary judgment motion. (*See* Metter Decl. ¶¶ 28-34). In the first instance, Mr. Metter's conclusory allegations concerning oral statements allegedly made by Mr. Barker at the time of the closing are barred by the parol evidence rule. Second, were Mr. Metter allowed to assert this defense, he has provided no evidence that would support a claim for fraudulent inducement.

---

[1] It is not clear how this argument applies to the other defendants, also individual guarantors in this action. Mr. Metter has not shown that he informed the other defendants of the alleged inaccuracies in the financial covenants in the Financing Agreement, whether the other defendants were present at the closing, or how the other defendants may have been fraudulently induced to sign their guarantees.

3

### 1. The Parol Evidence Rule Precludes Mr. Metter From Claiming Reliance On Statements Allegedly Made At The Time Of The BTR Loan Closing

Mr. Metter's argument that he relied on Mr. Barker's alleged oral statements at the time of closing, and was therefore fraudulently induced into signing the guaranty and related loan documents must fail in light of the integration and waiver provisions found in the BTR loan documents. (*See* Metter Declaration ¶¶ 28-34). "A guarantor may not vary the terms and conditions of an integrated, unconditional guarantee based upon claimed oral understandings made at the time of contract formation." *Citizens Fidelity Bank v. Coulston Int'l Corp.*, 160 A.D.2d 1110, 1111, 553 N.Y.S.2d 901, 902 (App. Div. 3d Dep't 1990); *see Braten v. Bankers Trust Co.*, 468 N.Y.S.2d 861, 864, 456 N.E.2d 802, 805 (N.Y. Ct. App. 1983) (holding that unconditional guarantee could not be contradicted by evidence of outside agreement to forbear on guarantors' default for specific time period). Indeed, under New York law, "parol evidence is not admissible to prove a condition precedent to a written agreement if the condition contradicts the express written terms of such an agreement." *Mastan Company, Inc. v, Weil*, 84 A.D.2d 657, 658, 444 N.Y.S.2d 315, 317 (App. Div. 3d Dep't 1981) (affirming lower court's grant of summary judgment on unconditional guarantee and holding that allegations concerning oral statements in support of fraud in the inducement defense were barred by parol evidence rule and language of guarantees).

New York courts have routinely applied the parol evidence rule in prohibiting the use of oral evidence to assert fraud in the inducement as a defense to the signing of an unconditional guarantee. *See Newcourt Small Business Lending Corp. v. Grillers Casual Dining Group Inc.*, 284 A.D.2d at 683, 727 N.Y.S.2d at 701 (granting plaintiff's CPLR 3213 motion, and precluding guarantors' defense of fraudulent inducement based on oral representations where guarantee unconditional); *Chase Manhattan Bank v. Goldberger*, 199 A.D.2d 97, 97, 605

4

N.Y.S.2d 59, 59 (App. Div. 1st Dep't 1993) (defendants precluded from using parol evidence to disprove unconditional nature of guarantee).  Defendants, here, cannot create a triable issue of fact simply by alleging contradictory oral statements supposedly made prior to signing the BTR loan agreements – these documents embody the complete agreement between the parties.

The Financing Agreement signed by the parties contains an integration clause which states:

> This Agreement, together with the other Loan Documents, reflects the entire understanding of the parties with respect to the transaction contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

(Financing Agreement, Ex. A to 6/5/08 Olson Aff., Section 10.21).  Moreover, the Financing Agreement explicitly states that no waiver or amendment shall be made to the agreement unless it is in writing and signed by the lender or agent with the consent of the lender.  (*Id.* Sections 10.02 and 10.03).  The guarantees also contain provisions requiring that any amendments be in writing.  (6/5/08 Olson Aff., Ex.C-F, Section 9).

The provisions in these agreements preclude Mr. Metter, and the other Defendants, from relying on any alleged extraneous oral representations in support of a fraudulent inducement defense.  *See General Bank v. Mark II Imports, Inc.*, 293 A.D.2d 328, 328-29, 741 N.Y.S.2d 201, 202 (App. Div. 1st Dep't 2002) (granting summary judgment in favor of lender where loan agreement and guarantee evidenced complete agreement).  Mr. Metter should have sought a written amendment of the allegedly "incorrect" provisions of the Financing Agreement — something he has not done.  (Norton Decl. ¶ 7; Olson Decl. ¶ 5).  Indeed, the indisputable record evidence shows that neither Mr. Metter nor his attorneys ever brought this purported issue to Plaintiffs' attention prior to this lawsuit.  (Olson Aff. ¶¶ 3-5; Norton Decl. ¶¶ 7-9).

5

### 2. Even If Mr. Metter's Evidence Could Be Considered On This Motion It Does Not Raise An Issue Of Fact That Would Warrant Denial Of Plaintiffs' Summary Judgment Motion

Mr. Metter's primary argument in support of his fraudulent inducement defense is that he recognized that the financial covenants in the Financing Agreement were "incorrect" at the time of the closing of the BTR loans and that he informed Mr. Barker, a representative for Plaintiffs who was at the closing, that the financial covenants needed to be amended. (Metter Decl. ¶¶ 30-31). According to Mr. Metter, Mr. Barker "acknowledged that the[] financial covenants were incorrect" and encouraged Mr. Metter to sign the Financing Agreement despite the alleged impropriety of the financial covenants, allegedly representing to Mr. Metter that the financial covenants could be fixed after the closing. (*Id.* ¶ 30).[2] Mr. Metter further alleged that he corresponded with the Plaintiffs "immediately following the closing" and "attempted to correct the financial covenants," yet he provides no documentary evidence showing his attempts to correct those covenants. (*Id.* Metter Decl. ¶ 35). Indeed, in the time which has elapsed since the closing on the BTR loan agreements, Plaintiffs have received no communications from Mr. Metter advising them of his purported concerns regarding the financial covenants – his opposition papers are the first time in which he has brought any purported impropriety with these covenants to Plaintiffs' attention. (Olson Decl. ¶ 5; Norton Decl. ¶ 7).

More importantly, the incontrovertible evidence shows that the projections upon which the financial covenants were based were provided to Plaintiffs by Mr. Metter himself. (Norton Decl. ¶ 4). At the time that he provided these projections, Mr. Metter assured Plaintiffs that the projections were "very conservative but extremely accurate." (*Id.*). Moreover, the

---

[2]  Mr. Barker has no recollection of Mr. Metter telling him about any problems with the financial covenants at the November 2006 closing; nor did Mr. Barker tell Mr. Metter that the financial covenants, as drafted at the time of closing, would later be amended. (Declaration of Jacob Barker, dated August 12, 2008 ("Barker Declaration") ¶ 2).

6

financial covenants, as calculated, provided BTR with a cushion in case BTR's own projections were not met during the term of its loan. (*Id.*). The only way that a default could have been called against BTR was if it materially underperformed vis-à-vis its own projections and this is what, in fact, occurred. (*Id.* ¶ 5).

The undeniable facts are that Mr. Metter was represented by counsel at the time of the closing and that counsel was provided with a draft of the Financing Agreement four days prior to the closing. (*Id.* ¶ 8). Mr. Metter's counsel was also involved in negotiating a Post-Closing Agreement. (*Id.* ¶ 9). The parties continued to discuss post-closing items up until early 2007. (*Id.*). At no time did Mr. Metter or his counsel represent that there was a problem with the financial covenants or demand that an amendment to the financial covenants be included in the post-closing agreement. (*Id.*).

Mr. Metter had other opportunities in which to object to the financial covenants in the Financing Agreement, but failed to do so. For example, BTR and Plaintiffs negotiated an amendment to the Financing Agreement in October 2007 which related to BTR's purchase of a radio station. (Olson Decl. ¶ 4). Mr. Metter was again represented by counsel in this transaction, and again he provided comments to Plaintiffs regarding the amendment. (*Id.*, Ex. B). At no time during the course of this transaction did Mr. Metter or his counsel object to the financial covenants as written. (*Id.* ¶ 4).

Finally, despite Mr. Metter's sworn statement to the contrary, Mr. Metter was represented by counsel during the negotiation of the Forbearance Agreement in December 2007. (Olson Decl. ¶ 3).[3] This agreement directly addressed BTR's defaults under the financial

---

[3] Mr. Metter states in his declaration that he was not represented by counsel at the time he signed the Forbearance Agreement. (Metter Decl. ¶ 36(b)). This is patently false as Mr. Metter provided the agreement to his attorney, Mr. Emas of Miami Beach, Florida, who in turn corresponded with Timothy Olson, General Counsel and Managing Director at Barker Capital. (Olson Decl. ¶ 3).

7

covenants. (Ex. G to 6/5/08 Olson Aff.). Mr. Metter provided comments to his attorney regarding the Forbearance Agreement, but never mentioned that the covenants themselves were incorrect or that such covenants should be amended. (*Id.*).

Mr. Metter has spoken to Plaintiffs' representatives on numerous occasions during the course of the parties' relationship and never mentioned a problem with the financial covenants prior to this lawsuit. (Olson Decl. ¶ 5; Norton Decl. ¶7). Mr. Metter has provided no written evidence to the contrary. Mr. Metter's contentions regarding the financial covenants are a means to distract the Court from the matter at hand – BTR's numerous defaults under the Financing Agreement that warrant summary judgment in Plaintiffs' favor.

### B.    Mr. Metter Has Provided Insufficient Evidence Of Duress

Mr. Metter has not provided legally sufficient evidence of duress to warrant denial of Plaintiffs' summary judgment motion. In order to defeat a motion for summary judgment on a contract, a defendant must establish evidence of all of the elements of economic duress. *See Muller Constr. Co. v. New York Tel. Co.*, 309 N.Y.S.2d 817, 817, 359 N.E.2d 328, 328 (N.Y. Ct. App. 1976); *Finserv Computer Corp. v. Bibliographic Retrieval Servs.*, 125 A.D.2d 765, 766, 509 N.Y.S.2d 187, 188-89 (App. Div. 3d Dep't 1986). The Second Circuit has interpreted New York's law of economic duress as requiring four elements: 1) a threat; 2) which was unlawfully made; and 3) caused involuntary acceptance of contract terms; 4) because the circumstances permitted no other alternative. *Kiska Construction Corp. v. G&G Steel, Inc.*, No. 04-civ-9252, 2005 WL 1225944, at *4 (S.D.N.Y. May 20, 2005). "[T]he person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *Id.*

8

It is clear that Mr. Metter has lost his right to assert duress in the signing of the Forbearance Agreement as he has first raised this issue eight months after the signing of the agreement, which has already expired by its own terms. (Olson 6/5/08 Affidavit ¶ 8). Moreover, Mr. Metter was represented by counsel at the time the agreement was signed and neither individual made any effort to seek an amendment of the financial covenants in the Financing Agreement or repudiate the terms of the Forbearance Agreement. (Olson Decl. ¶ 3). Moreover, because Mr. Metter was represented by counsel and was personally able to review, and comment on, the Forbearance Agreement, he cannot show that he had no other choice but to accept the terms of that agreement. (*Id.* ¶ 3). In fact, his counsel circulated the execution copy of the Forbearance Agreement. (*Id.*). Finally, Mr. Barker never "threatened" Mr. Metter with respect to his signing of the Forbearance Agreement. (Barker Decl. ¶ 3).[4]

Mr. Metter's argument concerning the Forbearance Agreement makes little sense as Plaintiffs were affording BTR the benefit of forbearance for numerous defaults under the Financing Agreement that related to the financial covenants – Plaintiffs could not threaten to afford BTR a benefit.

---

[4] Mr. Metter's declaration states that Mr. Barker "threatened" Mr. Metter into hiring a CPA to compile and maintain BTR's financial records. (Metter Decl. ¶ 36(a)). At the time that Plaintiffs requested that BTR hire a CPA, BTR was non-compliant with its financial reporting requirements under the Financing Agreement and was using a part-time office manager to compile its financials. This manager was unable to produce GAAP compliant financials as required by the Financing Agreement. (Norton Decl. ¶ 10). Mr. Metter cannot be deemed to have suffered duress as a result of Plaintiffs' enforcement of their rights under the Financing Agreement. *See Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, No. 93-cv-4949, 1995 WL 505891 (S.D.N.Y. Aug. 23, 1995) ("[I]t is well-established that the 'threatened exercise of a legal right cannot constitute duress.'").

**POINT III**

**DEFENDANTS' DEFAULTS UNDER THE FINANCING AGREEMENT ARE NOT EXCLUSIVE TO THE FINANCIAL COVENANTS**

Mr. Metter's wild assertions regarding the financial covenants in the Financing Agreement are a smokescreen intended to distract the Court from BTR's numerous defaults under this agreement. From the inception of the parties' relationship, until the present, BTR has been in default of the Financing Agreement. Plaintiffs have tried to work with BTR in curing these defaults rather than immediately exercising their rights under the Financing Agreement. Despite Plaintiffs' efforts, BTR has persisted in defaulting. Some examples of BTR's defaults are:

- For 14 of the 20 months subsequent to the closing of the loan, BTR has failed to provide Plaintiffs with monthly financial statements on a timely basis as required under Section 6.01(a)(iii) of the Financing Agreement.

- BTR has failed to provide Plaintiffs with audited financial statements for the year 2007, which were due in March 2008 under Section 6.02(a)(ii) of the Financing Agreement.[5]

- For 2008, BTR has failed to provide Plaintiffs with statements of personal net worth for each of the individual guarantors (the defendants herein), which are required to be delivered on a quarterly basis pursuant to Section 6.04 of the Financing Agreement.

The Officer's Certificates delivered and executed by Mr. Metter and submitted with Plaintiffs' motion further demonstrate defaults occurring outside the financial covenants of the Financing Agreement: BTR's failure to deliver a written subordination and access agreement for KNUU

---

[5] To this day, Plaintiffs have not received audited financial statements from BTR for the year 2007.

10

radio station in Las Vegas, Nevada; and BTR's issuance of stock in violation of a credit agreement entered into by the parties. (Olson Decl. ¶¶ 8-9).

The fact that BTR claims it is current on its interest payments is irrelevant and incorrect. Plaintiffs are entitled to full performance of all covenants and conditions that are integral parts of the loan, not just payment obligations, Moreover, because BTR has committed numerous defaults, it is obliged to pay interest at a higher default rate, but it has not. (*Id.* ¶ 10). Thus Defendants are wrong in claiming that BTR is "current on all payment obligations under the Financing Agreement." (Metter Decl. ¶ 6).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, the Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment and the affidavits and declarations submitted therewith, Plaintiffs' motion for summary judgment should be granted.

Dated: August 13, 2008

                                            Respectfully Submitted,

                                            WINSTON & STRAWN LLP

                                            By:          /S/

                                            Anthony DiSarro
                                            Kara Gorycki
200 Park Avenue
New York, New York 10166
(212)294-6700
adisarro@winston.com
kgorycki@winston.com

*Attorneys for BC Media Funding Company II, LLC and Media Funding Company, LLC*

11

NY:1195238.1