UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BC MEDIA FUNDING COMPANY II and
MEDIA FUNDING COMPANY,

                       Plaintiffs         08 CV 6228 (RPP)

- against -

**OPINION AND ORDER**

FRANK LAZAUSKAS, MICHAEL L. METTER,
LEONARD F. MOSCATI and B. MICHAEL PISANI,

                       Defendants.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/24/09

On July 3, 2008, Plaintiffs BC Media Funding II, LLC and Media Funding Company, LLC ("Plaintiffs") commenced this action by filing a motion for summary judgment in lieu of complaint in New York State Supreme Court, New York County. See N.Y.C.P.L.R. § 3213. Defendants Frank Lazauskas, Michael L. Metter, Leonard F. Moscati, and B. Michael Pisani ("Defendants" or "Guarantors") filed a Notice of Removal pursuant to 28 U.S.C. §1441 on July 9, 2008. This Court has original jurisdiction pursuant to 28 U.S.C. §1332.

Plaintiffs seek to enforce individual Guaranty Agreements made by Defendants in connection with a Financing Agreement in which Media Funding Company, LLC agreed to extend term loans to BusinessTalkradio.net, Inc. in the aggregate principal amount of $5.5 million. For the reasons set forth below, Plaintiffs' motion is granted.

## I.    BACKGROUND

Barker Capital, LLC ("Barker Capital") and BC Media Funding Company II ("BCMF") are under common control. (Olson Aff. ¶1.) BCMF is the agent for Media

1

Funding Company ("MFC") for a Financing Agreement, dated November 13, 2006 (the "Financing Agreement"), between MFC, as lender, and BusinessTalkradio.net, Inc. ("BTR") as borrower. (Id. ¶2; Olson Aff. Ex. A.) BTR owns and operates two radio networks and at least three FCC licensed AM radio stations. Defendant Michael L. Metter is President and CEO of BTR. (Id. ¶3.) In accordance with the Financing Agreement, MFC agreed to extend term loans to BTR in the aggregate principal amount of $5.5 million, and these loans were secured by a lien on all of BTR's assets (as set forth in a Security Agreement, dated November 13, 2006). (Id. ¶4; Olson Aff. Ex. B.) Moreover, each of the Defendants executed an irrevocable, absolute, and unconditional personal guarantee ("Individual Guarantee") of all amounts owed by BTR under the Financing Agreement. (Id. ¶5; Olson Aff. Ex. C, D, E, F.) Each of these Individual Guarantees requires the individual Defendants to pay all sums payable by BTR under the Financing Agreement "when due, no matter how the same shall become due." (Id. ¶6.) Section 2 of the Individual Guarantee provides that these Guarantees are unconditional and that no action or notice is required to obligate the Guarantors to pay the amounts owed by BTR. (Id. ¶7.)

On December 28, 2007, BTR, BCMF, and MFC entered into a Forbearance Agreement due to events of default. BTR agreed and acknowledged that "Events of Default" existed under the Financing Agreement, and BCMF and MFC agreed to forbear from exercising their rights under the Financing Agreement. (Olson Aff. Ex. G.) This forbearance period expired no later than March 31, 2008 or in the event of default under the Forbearance Agreement. (Id.; Olson Aff. ¶8.) On April 24, 2008, BCMF sent the Defendants a written letter detailing the violations of the contractual covenants that were

2

independent "Events of Default" under the Financing Agreement. BCMF warned that it would take steps to enforce their rights under the Financing Agreement. (Id. ¶9; Olson Aff. Ex. H.) On May 6, 2008 and May 14, 2008, BTR provided BCMF certain Officer Certificates required under the Financing Agreement. Both Certificates explicitly detail various Events of Default. (Id. ¶10; Olson Aff. Ex. I.) Despite these defaults, BTR has not paid interest as required by the Financing Agreement. (Id. ¶11.) On May 16, 2008, BTR's attorneys wrote to BCMF and stated that no Events of Default had occurred. (Olson Aff. Ex. K.) In a response letter dated May 20, 2008, BCMF stated that by BTR's own admissions, Events of Default plainly exist under the Financing Agreement. (Olson Aff. ¶12; Olson Aff. Ex. L.)

On October 6, 2008, Timothy Olson, an Authorized Representative of BCMF, sent a letter to Michael Metter, President and CEO of BTR ("the October 6, 2008 letter"). The letter informs BTR that the Obligations under the Financing Agreement have been accelerated due to the existence of Events of Default. The outstanding balance of all Obligations of the Loan Parties to the Lender and Agent (exclusive of outstanding professional fees) is $5,437,743.61 "through and including October 6, 2008, and such amount increases at the rate of $2,961.86 per day for each day thereafter in October 2008." (Norton Supp. Decl. Ex. C.)

## II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

3

R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (internal citations omitted). However, the party opposing summary judgment "must 'demonstrate more than some metaphysical doubt as to the material facts' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### III. DISCUSSION

#### a. Plaintiffs' CPLR § 3213 Motion is Valid

"It is well established that the district court 'takes the [removed] action in the posture in which it existed when it is removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal.'" Sun Forest Corp. v. Shvili, 152 F.Supp.2d 367, 387 (S.D.N.Y. 2001) (quoting Miller v. Steloff, 686 F.Supp. 91, 93 (S.D.N.Y. 1988)). New York CPLR §3213 provides, in relevant part: "When an action is based upon an instrument for the payment of money only…the Plaintiff may serve with the summons a notice of Motion for Summary Judgment and the supporting papers in lieu of a complaint." New York courts have

4

consistently held that an unconditional guarantee is an instrument for the payment of money only within the meaning of the CPLR § 3213. See Council Commerce Corp. v. Paschalides, 92 A.D.2d 579 (2d Dep't 1983) (holding that a personal guarantee qualifies as an instrument for the payment of money only); North Central Pennsylvania Regional Planning & Development Comm. v. Woodworth, 154 A.D.2d 913, 913 (4th Dep't 1989) ("[I]t is undisputed that defendants unconditionally guaranteed payment of the corporate obligation which is now in default. Such an unconditional guarantee qualifies as an instrument for the payment of money only within the meaning of CPLR 3213."); European Am. Bank v. Lofrese, 182 A.D.2d 67, 71 (2d Dep't 1992).

Here, Defendants unconditionally guaranteed payment of the obligations of BTR as borrower under the Financing Agreement, and therefore a motion in accordance with New York CPLR 3213 is proper.

### b. Defendants are bound by their Unconditional Guarantees to pay the Obligations of BTR under the Financing Agreement

In their opposition papers, Defendants asserted two arguments. First, Mr. Metter alleged that oral agreements between the parties to the Financing Agreement were made at the time of closing regarding the financial performance covenants of Section 6.03 of the Financing Agreement. (Metter Decl. ¶¶ 28-30.) Mr. Metter also stated that he was forced to sign the Forbearance Agreement on behalf of BTR under duress. (Id. ¶ 36.) At oral argument on this motion, held on October 3, 2008 and October 10, 2008, Defendants abandoned these arguments for new arguments discussed infra.

However, even if Defendants had pursued the arguments raised in their opposition papers, they would have failed. First, Defendants' unconditional guarantees prevent them from asserting any defenses. Citibank v. Plapinger. 66 N.Y.2d 90 (1985). In Plapinger,

5

the New York Court of Appeals held that where a guarantee recited that it was "absolute and unconditional" and would be valid "irrespective of (i) any lack of validity of the [underlying Loan Agreement]...or any validity agreement or instrument relating thereto," or "(vii) any other circumstance which might otherwise constitute a defense" to the guarantee, fraud in the inducement is not a defense. Id. at 95. Second, the underlying defenses of fraud in the inducement and duress lack merit. In New York, parol evidence is not admissible to prove a condition precedent to a written agreement if the condition contradicts the express written terms of such an agreement. Hicks v. Bush, 10 N.Y.2d 488, 491 (1962). Moreover, the Financing Agreement and Guaranty Agreements signed by the parties contain integration clauses. (Olson Aff. Ex. A, Section 10.21; Olson Aff. Ex. C, D, E, F, Section 18.) See General Bank v. Mark II Imports, Inc., 293 A.D.2d 328, 328-329 (1st Dep't 2002) (granting summary judgment in favor of lender where loan agreement and guarantee evidenced complete agreement).

At oral argument on October 3, 2008, Defendants raised the following new arguments: 1) Plaintiffs did not provide notice of the acceleration of the outstanding indebtedness under the Financing Agreement; 2) Plaintiffs failed to make a demand for such amount to either the BTR or the Defendants as Guarantors; and 3) the amount of such indebtedness was not sufficiently supported in the motion papers.[1] Because none of these arguments raise a genuine issue of material fact, Plaintiffs' motion for summary judgment is granted.

First, notice of the acceleration of the BTR loan was not required under the Guarantees. Section 2(a)(iii) of the Guaranty Agreements expressly provides that "the

---

[1] During the October 3, 2008 hearing, The Court granted an adjournment of oral argument for one week and permitted Plaintiffs to submit a written response to these new arguments raised by Defendants.

6

Agent or the Lender may...without notice...accelerate...payment or performance of any one or more of the Guaranteed Obligations." (Olson Aff. Ex. C, D, E, F, Section 2(a)(iii).) Moreover, in Section 3(d), the Guarantors explicitly waived any "notice of intention to accelerate [or] notice of acceleration." (Id., Section 3(d).) Regardless of whether or not Plaintiffs were required to provide notice of acceleration, any notice requirement has been satisfied by the filing of this action or the October 6, 2008 letter to BTR. (Norton Supp. Decl. Ex. C.)

Second, Plaintiffs may not have been required under the Financing Agreement to make a demand for payment to BTR, but in any event, the October 6, 2008 letter satisfies any demand requirement.[2] Likewise, the Guaranty Agreements contain a waiver provision under which Defendants have waived "default, demand, presentment for payment, and notice of demand," (Olson Aff. Ex. C, Section 3(c).), but even if a demand were necessary, the October 6, 2008 letter or the filing of this action acts as a demand.

Finally, Plaintiffs have provided a detailed breakdown of the balance owed by Defendants. (Norton Supp. Decl. ¶¶ 3-4; Norton Supp. Decl. Ex. A.)

---

[2] Section 8.01 of the Financing Agreement contains conflicting language with respect to the demand requirement: "If any of the following Events of Default shall occur and be continuing: ... then ... the Agent may, and shall at the request of the Lender, *by notice to the Borrower,* (i) declare all or any portion of the Term Loan then outstanding to be due and payable, ... *without presentment, demand, protest or further notice of any kind,* all of which are hereby expressly waived by each Credit Party..." (Olson Aff. Ex. A at page 71)(emphasis added).

7

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted.

Plaintiffs should submit a proposed judgment on three days notice to Defendants.


IT IS SO ORDERED.
Dated: New York, New York
October 24, 2008

Robert P. Patterson, Jr.
U.S.D.J.

8